43 A.3d 1029

**SHAILENDRA KUMAR, P.A.**

**v.**

**Anand M. DHANDA.**

**No. 47, Sept. Term, 2011.**

Court of Appeals of Maryland.

May 2, 2012.

Michael J. McAuliffe (Ethridge, Quinn, Kemp, McAuliffe, Rowan & Hartinger, Rockville, MD), on brief, for petitioner.

Angus R. Everton (Robert C. Morgan of Morgan Carlo Downs & Everton P.A., Hunt Valley, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, DALE R. CATHELL (Retired, Specially Assigned), JJ.

Opinion by GREENE, J.

Shailendra Kumar, M.D., P.A. ("Dr. Kumar" or "Petitioner") sued Anand M. Dhanda, M.D. ("Dr. Dhanda" or "Respondent") in the Circuit Court for Montgomery County alleging breach of contract and the breach of a covenant not to compete. The contract at issue provided for disputes to be initially addressed through mandatory, non-binding arbitration. Respondent filed a motion to dismiss the action, asserting that the suit was barred by the applicable statute of limitations. Petitioner opposed dismissal, arguing that the complaint was timely because his cause of action had either not "accrued" or that limitations was tolled until the completion of arbitration. The trial court dismissed the action as time-barred and the Court of Special Appeals affirmed. Based on the record before us, we shall affirm the judgment of the Court of Special Appeals and hold that while non-binding arbitration may have been a condition precedent to litigation, it neither affected the accrual of the underlying breach of contract claims, nor otherwise tolled the statute of limitations applicable to maintaining an action in court.

## FACTS AND PROCEDURAL HISTORY

The complex procedural history essential to our resolution of this case stems from a single contract, prepared without the assistance of counsel. Petitioner and Respondent entered into an employment agreement ("the contract" or "the agreement") on August 28, 2001, whereby Respondent agreed to work as a doctor in Petitioner's urology practice through August 31, 2002. The contract contained, *inter alia,* a non-compete clause which prohibited Respondent from practicing within a specified radius of Petitioner's multiple offices or soliciting or accepting Petitioner's patients for three years following the expiration of the contract, or through August of 2005. An addendum to the contract prohibited Dr. Dhanda, during the term of the agreement, from practicing medicine or engaging in other professional activities outside of Dr. Kumar's practice, unless he obtained the consent of the association. The con-

tract also included the following mandatory, non-binding arbitration clause:

> D. *Arbitration:* All disputes arising out of this Agreement [excluding one paragraph], shall be resolved pursuant to arbitration conducted in accordance with the Maryland Uniform Arbitration Act, in Baltimore, Maryland. Both parties can go to Court if not satisfied by the decision of the Maryland Uniform Arbitration Act [sic].

As a result of discord between the parties, the employment relationship was not renewed upon termination of the Agreement on August 31, 2002. Soon thereafter, Respondent filed an initial suit for breach of contract against Petitioner in the Circuit Court for Anne Arundel County. He sought damages for an alleged breach of contract based on Petitioner's refusal to grant Respondent partner status in the business and the withholding of certain monies.

Petitioner filed an Answer and Demand for Jury Trial on October 18, 2002, which noted that "disputes are to be submitted to arbitration pursuant to agreement between the parties." Four months later, on February 26, 2003, Petitioner filed a motion to compel arbitration and to dismiss the action. The judge presiding in Anne Arundel County dismissed the action without prejudice on April 24, 2003, stating that the "claims are subject to mandatory arbitration," but noting that "[t]he case may be reopened to enforce the arbitration award, if necessary." [1]

The record is silent with regard to any activity between the parties for over two years following this dismissal. On April 29, 2005, however, Petitioner filed, in the Circuit Court for

---

1. Dr. Dhanda neither sought a stay nor appealed the court's dismissal. Although the propriety of this dismissal is not before us, it seems evident, as explained *infra,* that a court should stay an action " 'involving an issue subject to arbitration,' where a petition to arbitrate has been filed or an order to arbitrate has been made." *Questar v. Pillar,* 388 Md. 675, 685, 882 A.2d 288, 293 (2005) (quoting in part, the Maryland Uniform Arbitration Act, Md.Code (1973, 2006 Repl.Vol.) § 3–209 of the Courts and Judicial Proceedings Article), and the arbitration order would not have disposed of all claims.

Baltimore City, a petition to compel arbitration and to appoint an arbitrator. The petition also included separate counts concerning the substantive claims for breach of contract and breach of the non-compete provision. Following an apparent delay in service, on March 9, 2006, Respondent filed both a response to Petitioner's petition to compel arbitration and his own motion to dismiss the substantive counts for improper venue and as claims subject to mandatory arbitration. Petitioner then filed a response to the motion to dismiss, offering to withdraw the substantive counts if the Circuit Court would compel arbitration in order to resolve the issues. The court dismissed the substantive counts on April 28, 2006, but did not order arbitration. Four months later, on August 25, 2006, Petitioner filed a motion for summary judgment, urging the Circuit Court for Baltimore City to grant the earlier petition to compel arbitration. Following a brief bench trial, on November 20, 2006, the presiding judge granted the petition to compel arbitration and appointed J. Snowden Stanley, Jr. as the arbitrator the underlying dispute between the parties.[2]

After this apparent victory in securing an order compelling arbitration, Petitioner allowed nearly two more years to pass before actually submitting the matter to the arbitrator in March of 2008. Mr. Stanley issued his award on June 20, 2008. The award denied all relief to Petitioner and also denied relief to Respondent, save for an award of $868.00 as reimbursement for certain disability insurance premiums.

Finally, on March 16, 2009, almost a year after the arbitration award was issued, Petitioner filed the instant action in the Circuit Court for Montgomery County. The complaint stated that "[t]he Agreement requires arbitration as a requirement before Plaintiff can pursue a remedy in court . . . [t]he matter went to Arbitration, and a decision in favor of the Defendant was rendered in June of 2008. This matter is brought *de novo*." Respondent filed a motion to dismiss, arguing that the applicable three-year statute of limitations barred the action

---

2. The propriety of this action is not before us, and we do not address it.

because the alleged breaches of contract occurred between 2002 and 2005. Petitioner filed in opposition, contending that, because completion of arbitration was a condition precedent to filing a claim, the statute of limitations had not begun to run until the arbitration decision of June 20, 2008. After a hearing and supplemental briefing by the parties, Judge McGann, of the Circuit Court for Montgomery County dismissed the action with prejudice.

Petitioner noted a timely[3] appeal to the Court of Special Appeals, and the intermediate appellate court affirmed the trial court's judgment of dismissal. *Kumar v. Dhanda*, 198 Md.App. 337, 17 A.3d 744 (2011). We granted *certiorari* in the instant case, *Kumar v. Dhanda*, 420 Md. 463, 23 A.3d 895 (2011), to address the following questions presented:

1. Where a contract specifically requires that the parties submit to non-binding arbitration, and states that the parties may "go to court if not satisfied by the decision of the Maryland Uniform Arbitration Act, [sic]" does the cause of action accrue at the time of the breach or at the time of the non-binding arbitration?

2. When the parties agree not to "go to court" until after a non-binding arbitration, does the statute of limitations begin to run at the time of the breach or at the time a party can "go to court?"

We shall affirm the judgment of the Court of Special Appeals and hold that while non-binding arbitration, mandated by the contract, may have constituted a condition precedent to litigation, pursuing arbitration neither postponed the accrual

---

**3.** There was some discussion in the intermediate appellate court and in the briefs before this Court as to whether the appeal was timely filed, given the inclement weather that closed the Circuit Court for Montgomery County from Monday, February 8, 2010 through Friday, February 12, 2010. The issue is not before us on *certiorari*, and Respondent does not dispute that the appeal was timely filed. In any event, we agree with the intermediate appellate court's analysis that the appeal was, in fact, timely filed pursuant to Maryland Rule 1–203(a)(2) (providing, in essence, that if the office of the clerk is closed on the last day of the period for filing a paper in court, the period will run until the end of the next day that the office is open.).

of the underlying breach of contract claims, nor otherwise tolled the statute of limitations applicable to maintaining an action in court.

## STANDARD OF REVIEW

We recently reiterated the standard of review applicable to motions to dismiss in *Parks v. Alpharma, Inc.*, 421 Md. 59, 25 A.3d 200 (2011), stating:

> On appeal from a dismissal for failure to state a claim, we must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted. We must confine our review of the universe of facts pertinent to the court's analysis of the motion to the four corners of the complaint and its incorporated supporting exhibits, if any.

*Parks*, 421 Md. at 72, 25 A.3d at 207 (internal quotations omitted). In the instant case, Respondent moved to dismiss based on the affirmative defense of limitations, asserting that Petitioner's claims regarding the underlying contractual disputes were time barred, as a matter of law. We have held consistently that "the question of accrual in § 5–101 is left to judicial determination." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000). We review the grant of Respondent's motion in order to "determine whether the court was legally correct." *Parks*, 421 Md. at 72, 25 A.3d at 207 (quotation omitted), *accord Doe v. Roe*, 419 Md. 687, 693, 20 A.3d 787, 791 (2011) ("In reviewing the Circuit Court's grant of a motion to dismiss, our task is confined to determining whether the trial court was legally correct in its decision to dismiss." (quotations omitted)).

## DISCUSSION

The applicable statute of limitations is encompassed in Maryland Code (1973, 2006 Repl.Vol.) § 5–101 of the Courts and Judicial Proceedings Article, which states that: "[a] civil action at law shall be filed within three years from the date it *accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced." *See Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 647 & n. 5, 741 A.2d 1099, 1103 & n. 5 (1999) (applying § 5–101 to a breach of contract claim); *Baltimore County v. RTKL Assocs.*, 380 Md. 670, 689, 846 A.2d 433, 444 (2004) (same); *Himelfarb v. American Express Co.*, 301 Md. 698, 703, 484 A.2d 1013, 1015 (1984) (same); *Millstone v. St. Paul Travelers*, 183 Md.App. 505, 515, 962 A.2d 432, 437 (2008) (holding that a suit filed on a specified date "would have been well within the three year statute of limitations that is generally applicable to contract actions."), *aff'd*, 412 Md. 424, 987 A.2d 116 (2010).

Petitioner first contends that because the contract between the parties required the completion of non-binding arbitration as a condition precedent to filing suit, his causes of action had not "accrued" within the meaning of § 5–101 until the arbitration award was issued on June 20, 2008. Therefore, under his argument, Petitioner would have had three years from that date, or until June 20, 2011, to timely file in court. In support of this theory, he cites case law in which we stated:

It is clear that the test to be utilized in fixing the accrual date of a cause of action "is to ascertain the time when plaintiff could have first maintained his action to a successful result. The fact that he might have brought a premature or groundless action is immaterial."

*James v. Weisheit*, 279 Md. 41, 44, 367 A.2d 482, 484 (1977) (quoting *W., B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 205, 100 A. 86, 89 (1917)); *accord Henry's Drive–In, Inc. v. Pappas*, 264 Md. 422, 428, 287 A.2d 35, 38 (1972) ("[L]imitations will run from the time the plaintiff could have acted. . . ."). Inserting the language from these precedents into his argu-

ment, Petitioner summarizes the instant case in the following manner:

> Dr. Dhanda filed a premature lawsuit in Anne Arundel County. That lawsuit was dismissed because the contract between the parties required them to go to arbitration before they could "go to court." Dr. Dhanda's suit was premature and could not be pursued to a successful result.
>
> The same logic applies to Dr. Shailendra Kumar M.D., P.A.'s suit. The association could not have brought its lawsuit until June 2[0], 2008. By the terms of the contract it was not permitted to "go to court" before that date. Any suit filed before that date would have been premature and would have been dismissed. Therefore, the cause of action did not accrue until that date.

Respondent argues otherwise, asserting that the causes of action for breach of contract accrued for the purpose of the statute of limitations at the time of the alleged breaches. Accordingly, the latest possible date for accrual of the breach of contract cause of action was the contract's termination date of August 31, 2002, and the latest date for the accrual of the breach of the non-compete clause was August 31, 2005, the date upon which the clause expired by its own terms. Applying the three-year statute of limitation to these dates makes clear that both claims were time-barred when Petitioner instituted the current suit on March 16, 2009, and were therefore properly dismissed.

We agree with Respondent's assessment of the applicable accrual dates. As our case law makes clear, in the context of the statute of limitations, "[t]he law is concerned with accrual in the sense of testing whether all of the *elements* of a cause of action have occurred so that it is complete." *St. Paul Travelers v. Millstone*, 412 Md. 424, 432, 987 A.2d 116, 121 (2010) (emphasis added) (quotation omitted). In breach of contract cases, a cause of action typically accrues at the time of the breach. *See Jones v. Hyatt Insurance Agency, Inc.*, 356 Md. 639, 648, 741 A.2d 1099, 1104 (1999); *Federalsburg v. Allied Con.*, 275 Md. 151, 157, 338 A.2d 275, 280 (1975);

*Cotham v. Bd. of Cnty. Comm'rs,* 260 Md. 556, 562, 273 A.2d 115, 118 (1971). In the instant case, although not specifying the particular dates, both parties agree that the alleged breaches of contract occurred more than three years prior to the filing of the complaint in the Circuit Court for Montgomery County.[4]

The cases Petitioner cites in order to assert that limitations does not begin to run until a plaintiff can "maintain his action to a successful result," all concerned whether the necessary elements of a cause of action had arisen under the facts that were presented. *See James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482, 484 (1977) (analyzing accrual as the point in time that "the plaintiff could have proved all five of the essential elements of deceit"); *Henry's Drive-In, Inc. v. Pappas,* 264 Md. 422, 287 A.2d 35 (1972) (considering whether a cause of action could arise for breach of lease before the lessor made a demand for payment); *W., B. & A. Elec. R.R. Co. v. Moss,* 130 Md. 198, 100 A. 86 (1917) (evaluating, and ultimately remanding to the jury, whether the plaintiff's claim was barred by limitations in a *quantum meruit* suit where plaintiff asserted that he had completed the services less than three years prior to filing). In the instant case, neither party disputes that all of the *elements* of Petitioner's breach of contract claims

---

4. Also, there is no contention by Petitioner that he was unaware of, or otherwise did not discover the breaches when they occurred. Therefore, the discovery rule is not implicated under the facts presented. *See Jones v. Hyatt Insurance Agency, Inc.,* 356 Md. 639, 648, 741 A.2d 1099, 1104 (1999) ("Since the discovery rule is now generally applicable in civil actions, accrual of the cause of action was postponed until [plaintiffs] knew or should have known of the breach."); *Vigilant Ins. Co. v. Luppino,* 352 Md. 481, 489, 723 A.2d 14, 17 (1999) ("Generally, a cause of action for breach of a contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach." (citation omitted)); *Bacon & Assocs. v. Rolly Tasker Sails (Thailand) Co.,* 154 Md.App. 617, 636, 841 A.2d 53, 65 (2004) (suggesting that Maryland law does not preclude application of the discovery rule to a contract action where the facts are present). The rule represents "a recognition that the Legislature, in employing the word 'accrues' in § 5–101 never intended to close our courts to plaintiffs inculpably unaware of their injuries." *Murphy v. Merzbacher,* 346 Md. 525, 532, 697 A.2d 861, 865 (1997) (citations omitted).

existed, at the very latest, as of the dates upon which the applicable contractual provisions terminated.

As the intermediate appellate court aptly noted:

The fact that Dr. Kumar and Dr. Dhanda had contracted, pursuant to the Agreement, to engage in non-binding arbitration as a condition precedent to bringing suit in circuit court did not mean that Dr. Kumar's causes of action (or Dr. Dhanda's causes of action) did not accrue under CJP section 5–101 when all of their elements had arisen. (Indeed, both parties' causes of action necessarily had to have accrued even before arbitration was undertaken; otherwise the arbitrator would not have had the claims before him to resolve.) It meant only that the parties, and each of them, had to take timely steps to engage in arbitration before limitations expired; enter into a further agreement to toll limitations; or file suit and request a stay pending arbitration.

*Kumar*, 198 Md.App. at 345, 17 A.3d at 749 (footnote omitted). We agree with this analysis. As we explain, *infra*, Petitioner was not precluded by the contractual language from filing suit in the proper court and seeking a stay of the action pending arbitration.[5] As the intermediate appellate court noted, "[t]he permissive language, 'can go to court,' does not prohibit a party from filing suit prophylactically to guard against the

---

5. Of course, as the intermediate appellate court suggested, there were other actions Dr. Kumar could have taken to ensure that his claim would satisfy the applicable statute of limitations. This included seeking dismissal of the Anne Arundel County action and then filing a *timely* petition to enforce the arbitration clause, completing arbitration, and subsequently filing suit if not satisfied with the result, prior to the expiration of limitations. Alternatively, Dr. Kumar could have filed a counterclaim in Anne Arundel County Circuit Court, and sought a stay of the proceedings pending arbitration. Further, Petitioner could have entered into a tolling agreement with Respondent. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 252, 674 A.2d 106, 123 (1996) (noting that "the Tolling Agreement created the parties' own private, contractually established limitations period. The result of the agreement was that the [plaintiff] could bring its suit, even though limitations had run, and the [d]efendants waived their ability to raise limitations as a defense, as long as suit was filed within the contractually authorized period ...." (citations omitted)).

running of the statute of limitations." *Kumar,* 198 Md.App. at 345 n. 3, 17 A.3d at 749 n. 3. Petitioner asserts before this Court, however, that

> "the specific language of the arbitration clause contradicts [the holding of the Court of Special Appeals]. The clause says that the parties must resolve the matter by arbitration. If not satisfied, the parties can "go to court." There is no right to bypass the arbitration or make a "prophylactic" filing."

To bolster his point, Petitioner cites the Ninth Circuit case of *Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d 1205 (9th Cir.1998), which explained:

> Although it defies easy definition, the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, *i.e.* to an award made by a third-party arbitrator. Arbitration does not occur *until the process is completed and the arbitrator makes a decision.* Hence, if one party seeks an order compelling arbitration and it is granted, the parties must then arbitrate their dispute to an arbitrators' decision, and *cannot seek recourse to the courts before that time.*

*Wolsey, Ltd.,* 144 F.3d at 1208 (quoting *Harrison v. Nissan Motor Corp.,* 111 F.3d 343, 350 (3rd Cir.1997)) (emphasis in original). It is clear to us, however, that the *Wolsey* Court uses the word "recourse," to signify litigating for judicial resolution of a case, which is by definition different than filing an action in order to ensure later compliance with the statute of limitations. *See Harris v. Bridgford,* 153 Md.App. 193, 206, 835 A.2d 253, 260 (2003) ("Maryland courts have indicated . . . that *full judicial resolution* of the dispute constitutes a waiver [of the right to arbitration], but some limited participation in judicial proceedings does not." (emphasis added) (citations omitted)). The *Wolsey* case, therefore, does not lend support to Petitioner's argument, and is not inconsistent with the fact that Petitioner could have filed a timely action and sought a stay of his substantive claims pending arbitration.

Indeed, the Maryland Uniform Arbitration Act, to which the parties agreed to be bound,[6] specifically allows for stays of court proceedings pending arbitration. It states:

**3-209. Stay of Proceedings.**

(a) *Conditions for stay.*—A court shall stay any action or proceeding involving an issue subject to arbitration if:

(1) A petition for order to arbitrate has been filed; or

(2) An order for arbitration has been made.

(b) *Severability of issue.*—If the issue subject to arbitration is severable, the court may order the stay with respect to this issue only.

(c) *Order to include stay.*—If a petition to stay has been filed with a court where any action or proceeding concerning arbitration is pending, the court's order to arbitrate shall include the stay.

Md.Code (1973, 2006 Repl.Vol.) § 3-209 of the Courts and Judicial Proceedings Article. In accordance with the statute, this Court and the Court of Special Appeals have recognized the ability of a party to file an action to compel arbitration and seek a stay of claims that are related to arbitrable issues. *See Frederick Contractors, Inc. v. Bel Pre Medical Ctr., Inc.,* 274 Md. 307, 316, 334 A.2d 526, 531 (1975) ("Because we have a viable precedent in our case law, we have no hesitancy in holding that while Bel Pre, by demanding arbitration, should have been allowed to stay the [mechanic's lien foreclosure] proceedings in the circuit court, such a stay will remain effective only until arbitration is concluded or Bel Pre's demand is withdrawn."); *Letke Sec. Contractors, Inc. v. United States Sur. Co.,* 191 Md.App. 462, 471, 991 A.2d 1306, 1311 (2010) (noting that under the Arbitration Act "[n]ot only suits to enforce an arbitrator's award, but also suits to compel arbitration and *suits to stay court action pending arbitration,*

---

**6.** *See* Md.Code (1973, 2006 Repl.Vol.) § 3-206(b) of the Courts and Judicial Proceedings Article ("This subtitle does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply.").

are now to be viewed as 'favored' actions." (emphasis added) (quotation omitted)); *Redemptorists v. Coulthard Servs.* 145 Md.App. 116, 151, 801 A.2d 1104, 1124 (2002) (interpreting § 3–209 to reflect the Legislature's anticipation "that there may be non-arbitrable issues that are closely related to, and indeed dependent upon, arbitrable issues").

▆▆▆ In the instant case, the parties agreed to non-binding arbitration. Although this mode of dispute resolution may not necessarily promote the efficiency, speed, or economy achieved through binding arbitration, it will nevertheless be enforced as a term agreed upon by the parties. *See Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91, 95 (1983) ("Arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement." (citations omitted)); *NRT Mid–Atlantic, Inc., v. Innovative Properties, Inc.*, 144 Md.App. 263, 278–79, 797 A.2d 824, 833 (2002) ("Arbitration clauses will be freely enforced when there is an agreement to arbitrate the subject matter of the dispute." (citation omitted)); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir.2001) ("Although non-binding arbitration may turn out to be a futile exercise ... this does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced." (citations omitted)). In its non-binding form, arbitration is a condition precedent to litigation, however, the parties are not bound by the decision of the arbitrator and afterwards are free to pursue independent legal claims concerning the same issues pursued in arbitration. *See General Accident Ins. Co. v. Scott*, 107 Md.App. 603, 618, 669 A.2d 773, 780 (1996) ("In essence, the non-binding arbitration amounted to a 'dress rehearsal' for the upcoming trial on the merits. . . ."); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 745 (8th Cir.2003) ("Arbitration usually results in a final determination that is binding on the parties to the underlying dispute, but the parties may instead agree to non-binding arbitration, in which case the arbitrators' decision is likely to be a precursor to further litigation on the merits of the dispute."). Therefore, even where all issues are subject to non-binding arbitration, a

party should be able to seek a stay of the legal claims pending arbitration.[7]

---

7. By contrast, where all claims presented in a court action are subject to binding (rather than non-binding) arbitration, a court need not stay an action under § 3–209, but has the discretion to dismiss the complaint in its entirety. *See Walther v. Sovereign Bank*, 386 Md. 412, 421 n. 4, 872 A.2d 735, 741 n. 4 (2005) (noting that despite the case being stayed pending arbitration under § 3–209, an order to compel arbitration was appealable, "[b]ecause all of the issues in this case were ordered to [binding] arbitration by the trial judge, there was nothing left for the trial judge to 'stay' .... [A]ll of the issues were arbitrable thus the case was effectively dismissed ...."); *cf. Redemptorists v. Coulthard Servs., Inc.*, 145 Md.App. 116, 154, 801 A.2d 1104, 1126 (2002) (holding that although counts in a complaint were not themselves subject to arbitration, they would be affected by the binding arbitration decision and therefore litigation of the claims was to be stayed "pending resolution of the arbitrable issue upon which they depend." (citation omitted)). Indeed, staying an action which is comprised entirely of claims subject to *binding* arbitration under the Maryland Uniform Arbitration Act ordinarily would serve no purpose after the court has performed its task of either compelling or staying arbitration. *See* Md.Code §§ 3–207 to 3–208 of the Courts and Judicial Proceedings Article; *Stauffer Constr. Co. v. Bd. of Education*, 54 Md. App. 658, 664, 460 A.2d 609, 612 (1983) ("When such an [arbitration] agreement exists, or is alleged to exist, the courts are generally enjoined by the statute from interfering with the arbitration process. Indeed, the court's jurisdiction may properly be invoked in but two limited contexts—to compel arbitration or to stay it."). The Arbitration Act provides for specific, extremely limited judicial review, such that any post-arbitration proceeding will not constitute a renewed adjudication of the merits of the controversy. *See* § 3–223(b) (grounds for correcting or modifying award); § 3–224(b) (grounds for vacating award); § 3–224(c) ("The court shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief."); *Bd. of Educ. of Prince George's Cnty. v. Prince George's Cnty. Educators' Assoc., Inc.*, 309 Md. 85, 98, 522 A.2d 931, 937 (1987) (noting that with regard to binding arbitration, "[a]rbitrators are judges chosen by the parties to decide the matters ... finally and without appeal.... A contrary course would be a substitution of the judgment of the [judge] in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." (quotation omitted)); *Letke Sec. Contrs., Inc. v. United States Sur. Co.*, 191 Md.App. 462, 472, 991 A.2d 1306, 1312 (2010) ("[T]he standard of review of arbitral awards is among the narrowest known to the law. [An appellate court] will not vacate an arbitration award simply because the court would not have made the same award as the arbitrator, or for mere legal error." (citations omitted) (internal quotation omitted)); *Redemptorists*, 145 Md.App. at 153, 801 A.2d at 1125 (noting in a parenthetical that "[o]nce a *binding* [arbitration] award has

By way of comparison, the principle of staying an action involving an issue subject to non-binding arbitration is similar to that specifically approved by this Court in *Arroyo v. Board of Educ. of Howard County*, 381 Md. 646, 851 A.2d 576 (2004), with respect to administrative proceedings generally. That case involved an educator's wrongful termination action, which he filed in court over three years after the final administrative decision upholding his termination. We made clear that, in accordance with the primary administrative remedies available to the plaintiff under Maryland Code (1978, 2001 Repl.Vol., 2003 Supp.) § 6–202(a) of the Education Article, the statute of limitations on Arroyo's civil cause of action began to run no later than after the final administrative decision, making his tort claim time-barred as a matter of law. We also explained that:

> [W]here there is both an administrative remedy and an independent judicial remedy (*i.e.*, a specific judicial remedy exists other than judicial review of the administrative decision), where the administrative agency may have primary jurisdiction, and where the plaintiff invokes the judicial remedy prior to exhausting the administrative procedures . . . the trial court may retain jurisdiction pending exhaustion of the administrative procedures. Once the administrative procedures are exhausted, the trial court may proceed; the plaintiff whose case is meritorious may be entitled to whatever relief is available under either the independent judicial action or the administrative/judicial review remedy.

*Arroyo*, 381 Md. at 659–60, 851 A.2d at 584 (quoting *Md.–Nat'l Capital Park and Planning Comm'n v. Crawford*, 307 Md. 1, 18, 511 A.2d 1079, 1087–88 (1986)). Accordingly, we empha-

been rendered, issues settled by the award are no longer subject to future arbitration or litigation." (quoting Martin Domke, *Domke on Commercial Arbitration*, § 31:02, at 452 (2nd ed.1984))). Further, seeking such judicial review of binding arbitration awards is governed by special statutory limitations periods under the Act. § 3–223 ("A petition to modify or correct the award shall be filed within 90 days after delivery of a copy of the award to the applicant."); § 3–224 ("[A] petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner.").

sized that in addition to being free to file his legal action immediately after the final administrative decision was issued, the plaintiff could "have filed it even sooner subject to the separate action being stayed during the administrative proceedings." *Arroyo*, 381 Md. at 650, 851 A.2d at 579. We said:

> [W]e perceive that there is no prohibition against *filing* an independent judicial action while primary administrative proceedings are under way, but, that there is a prohibition against *deciding, i.e., adjudicating,* the issue in the independent judicial case until a final administrative determination is made.

*Arroyo*, 381 Md. at 660, 851 A.2d at 584–585 (emphasis added); *McCullough v. Wittner*, 314 Md. 602, 613, 552 A.2d 881, 886 (1989) ("[W]here a plaintiff has both an administrative remedy and an independent judicial action, and the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures." (citations omitted)).

Similarly, if the parties agree to non-binding arbitration, what they pursue afterwards in court is not modification, confirmation, or vacation of an award, but an entirely independent legal determination on the merits. Therefore, under these circumstances, the court's jurisdiction over the arbitrable claims is neither "extremely limited," *Letke Sec. Contrs., Inc. v. United States Sur. Co.*, 191 Md.App. 462, 472, 991 A.2d 1306, 1312 (2010), nor is the action governed by the limitation periods applicable to appeals of binding arbitration awards. *See* § 3–223; § 3–224 of the Courts and Judicial Proceedings Article. Like the situation in *Arroyo*, while *resolution* of the legal action must wait until the satisfaction of the condition precedent, the court's jurisdiction may be maintained and the claim properly stayed prior to that time.

## II.

It is clear, as discussed *supra,* that Petitioner's cause of action accrued more than three years prior to his filing suit.

We now examine the issue implicated by Petitioner's second question before this Court, namely, whether the limitations period was tolled by either a legislative or judicial exception at any point after accrual. We can find no applicable exception to Maryland Code § 5–101 of the Courts and Judicial Proceedings Article,[8] or language within the Maryland Uniform Arbitration Act, Maryland Code §§ 3–201 to 3–234 that would toll the statute of limitations in this case.[9] This of course, suggests the legislature's intent that the general statute of limitations not be tolled by the pursuit of arbitration. *See Booth Glass Co. Inc. v. Huntingfield Corp.*, 304 Md. 615, 623, 500 A.2d 641, 645 (1985) ("Indeed, the General Assembly has expressly provided exceptions to § 5–101 in those instances where it determined that a time limitation should be computed differently."). Further, as explained *infra*, we decline to adopt a judicial tolling exception to accomplish a result neither intended by the legislature under the Act, nor consistent with the purposes of the statute of limitations. *See Garay v. Overholtzer*, 332 Md. 339, 359, 631 A.2d 429, 439 (1993) (noting the general rule that "where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it." (citations omitted) (quotation omitted)).

---

8. This can be contrasted, for example, with § 5–202 which states that: "If a debtor files a petition in insolvency which is later dismissed, the time between the filing and dismissal is not included in determining whether a claim against the debtor is barred by the statute of limitations." *See Ali v. CIT Technology Fin. Servs., Inc.*, 416 Md. 249, 259, 6 A.3d 890, 896 (2010) (noting that by enacting the tolling provision, "the Maryland Legislature has made it its business to give plaintiffs additional time [to file suit]").

9. This statute can be contrasted with Maryland's Health Claims Mediation and Arbitration Act which does explicitly provide for the tolling of the statute of limitations pending completion of arbitration in front of the Health Care Alternative Dispute Resolution Office. *Group Health Assn., Inc. v. Blumenthal*, 295 Md. 104, 115, 453 A.2d 1198, 1205 (1983). Section 5–109(d) provides: "For the purposes of this section, the filing of a claim with the Health Care Alternative Dispute Resolution Office in accordance with § 3–2A–04 of this article shall be deemed the filing of an action." Md.Code (1973, 2006 Repl.Vol.) § 5–109(d) of the Courts and Judicial Proceedings Article.

In *Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966), we recognized a judicial tolling exception where a case was filed timely, but in the incorrect forum. The plaintiff in *Bertonazzi* mistakenly believed that the defendant lived in Baltimore County rather than Baltimore City, and therefore filed suit in the County. By the time the Circuit Court for Baltimore County dismissed the suit for improper venue, the Baltimore City filing was time-barred. In reversing, this Court reasoned that a tolling exception was consistent with the policy inherent in the statute of limitations. We said, "[s]tatutes of limitations are designed primarily to assure fairness to defendants on the theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust." *Bertonazzi,* 241 Md. at 367, 216 A.2d at 726. Under the facts presented it was clear that "[t]he appellee . . . was as fully put on notice of the appellant's claim by the suit in Baltimore County as she would have been by suit in Baltimore City. . . ." *Id.* We further explained the rationale behind our *Bertonazzi* holding in the later case, *Walko Corp. v. Burger Chef Systems, Inc.,* 281 Md. 207, 378 A.2d 1100 (1977). There, we noted that the narrow exception to the general rule against implying exceptions to the statute of limitations was supported in *Bertonazzi* by the fact that, at the time, Maryland was one of few states to have neither a saving statute nor a venue transfer statute, "a fact which, absent the Court's limited holding, might well have wrought great injustice on unwitting plaintiffs in particular cases." *Walko Corp.,* 281 Md. at 214, 378 A.2d at 1103.

In *Philip Morris v. Christensen,* 394 Md. 227, 905 A.2d 340 (2006) we reaffirmed *Bertonazzi* and explicated for the first time two factors which continue to guide our consideration of whether to apply a judicial tolling exception in a particular case. In order for an exception to be applied we must find that: "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and, (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations." *Philip Morris,* 394 Md.

at 238, 905 A.2d at 347. In *Philip Morris*, we adopted an exception by which the individual causes of action that were also asserted in a class action complaint for putative plaintiff class members, would be tolled during the pendency of the putative class action suit. The exception fulfilled the two conditions for recognizing a tolling exception because it was necessary in order to protect class action procedures under the Maryland Rules, and also maintained fairness to defendants who were already apprized of the claims by virtue of being named in the class action.

Recently, in *Swam v. Upper Chesapeake Medical Center, Inc.*, 397 Md. 528, 919 A.2d 33 (2007) we again determined that a judicial tolling exception was appropriate. In that case the plaintiff accompanied her father to the hospital where he would undergo surgery. Plaintiff was injured while in a waiting area, when she was stuck by an uncapped hypodermic needle after placing her hand on a counter. She filed suit in the Health Care Alternative Dispute Resolution Office, however, her suit was dismissed because she was not a patient receiving treatment, and therefore her injury was not a "medical injury" within the meaning of the Maryland Health Care Malpractice Claims Act. Her subsequent claim in the Circuit Court for Harford County was filed beyond the statute of limitations and was therefore also dismissed. In reversing, we held that the complaint related back to the plaintiff's timely, albeit misdirected, filing with the alternative forum and therefore could proceed on the merits. We explained that under the first requirement set out in *Philip Morris*, the "persuasive policy supporting the exception" was the "ambiguity regarding the appropriate forum for a medically-related claim and basic fairness to the parties." *Swam*, 397 Md. at 543, 919 A.2d at 41 (noting that "[t]he difficulty in determining the proper forum is analogous to the difficulty faced by the plaintiff in *Bertonazzi*."). The second component of the *Philip Morris* test was met because recognizing a tolling exception "would not contravene the general purpose of the statute of limitations" as the hospital had notice of the Swams' claims within three years of the injury such that the claims were not "so stale as to be

unjust." *Swam*, 397 Md. at 544, 919 A.2d at 42 (quotation omitted).

There have also been several cases in which we have refused to recognize a tolling exception because it would not comport with the factors expressed in *Philip Morris*. Particularly important to our consideration of the issues in the instant case is our decision in *Walko Corp. v. Burger Chef Systems, Inc.* 281 Md. 207, 378 A.2d 1100 (1977). In that case we considered on certification from federal court, whether the statute of limitations was suspended during the pendency of a motion for leave to intervene in a suit against the same defendant, ultimately denied as procedurally defective. *Walko*, 281 Md. at 209, 378 A.2d at 1101 (noting that the federal district court denied the motion to intervene after finding the "allegations to be 'entirely unrelated to the subject matter' of the underlying suit."). We held that there was no justification for tolling the statute of limitation under the facts presented. Despite the fact that fairness to the defendant was arguably ensured, as the defendant would have received notice of the plaintiff's claim through the motion to intervene, other policy reasons militated against recognizing an exception. This conclusion was based on our determination that if tolling were permitted, a plaintiff could, by filing defective motions, "effectively postpone the running of the statute [of limitations] for an indefinite period of time." *Walko*, 281 Md. at 215, 378 A.2d at 1104. The plaintiff also had ample opportunity prior to the expiration of the limitations period to file suit, both following the denial of the motion to intervene and during its pendency, but offered "no explanation for its failure to file a separate but timely action." *Walko*, 281 Md. at 215, 378 A.2d at 1104. From these facts we concluded that:

> Walko's approach to this case was hardly one of vigilance. The statute of limitations reflects a legislative judgment of what is deemed an adequate period of time in which a person of ordinary diligence should bring his action. The unexplained delay in bringing a timely action here hardly bespeaks the ordinary diligence required of one seeking to toll the statute of limitations. In a very real sense, Walko

has slept on its rights, and cannot be heard to complain now for its own tarriance.

*Walko,* 281 Md. at 215, 378 A.2d at 1104 (internal citations and quotations omitted).

 Returning to the instant case it is clear that where arbitration is non-binding, "the court house door remain[s] open to resolve that same controversy *provided that a lawsuit is filed before the applicable statute of limitations has run."* 3 Thomas H. Oehmke, *Commercial Arbitration,* 49:8 (3rd ed.2011) (emphasis added). We find no "persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception," under the facts presented. *See Philip Morris,* 394 Md. at 238, 905 A.2d at 347. There is no doubt that arbitration is favored and encouraged in Maryland because it "provides an informal, expeditious, and inexpensive alternative to conventional litigation." *RTKL Assocs. Inc. v. Baltimore Cnty.,* 147 Md.App. 647, 656, 810 A.2d 512, 517 (2002) (internal quotation omitted).

The ability, however, to contractually affect the statute of limitations applicable to the underlying cause of action within the arbitration agreement, suggests to us that a judicial tolling policy is not necessary to ensure the continued use of arbitration in Maryland or fairness to the parties. *See* Md. Rule 2–323(g)(15); *Kim v. Comptroller,* 350 Md. 527, 536, 714 A.2d 176, 180 (1998) (stating that "[s]tatutes of limitation are not ordinarily jurisdictional, and are generally waivable...."). We agree with the Court of Special Appeals's assessment that, therefore:

> The parties negotiating a mandatory non-binding arbitration agreement thus are free to agree to a provision tolling limitations generally or in the event the arbitration process is not concluded before limitations would run. If the parties so agree, it is known from the outset that limitations will not be a bar. If the parties do not so agree their situation is likewise clear. Limitations will apply (assuming it is raised as an affirmative defense), and therefore any party wanting to make certain that a remedy in circuit court will be

available will need to take steps to ensure that arbitration is completed before limitations runs or to file suit and request a stay within the limitations period if timely completion appears unlikely.

*Kumar,* 198 Md.App. at 350, 17 A.3d at 752.

Further, tolling limitations during the pendency of mandatory, non-binding arbitration would not comport with the "generally recognized purposes for the enactment of statutes of limitations." *Philip Morris,* 394 Md. at 238, 905 A.2d at 347. While, to be sure, arbitrating parties are on notice of any possible claims against them, thereby guarding them from stale claims, another purpose of the statute of limitations would be threatened by tolling in this situation. We have repeatedly touted the value of statutes of limitations as not only ensuring fairness between the parties, but also as essential to judicial economy and the pursuit of diligence in litigation. As we have said:

> Statutes of limitations, ... are intended simultaneously to provide adequate time for diligent plaintiffs to file suit, to grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and to serve societal purposes, including judicial economy. There is no magic to a three-year limit. It simply represents the legislature's judgment about the reasonable time needed to institute suit.

*Bragunier Masonry Contrs. v. Catholic Univ. of Am.,* 368 Md. 608, 627, 796 A.2d 744, 755 (2002) (quotation omitted); *accord Hecht v. Resolution Trust Corp.,* 333 Md. 324, 338, 635 A.2d 394, 401 (1994) ("[T]he purposes of statutes of limitation are to provide adequate time for a diligent plaintiff to bring suit as well as to ensure fairness to defendants by encouraging prompt filing of claims."); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). In declining to adopt a judicial tolling exception in *Walko,* we emphasized that:

> [Statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and unjust claim, or the voidable and unavoidable delay. They

have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.

*Walko,* 281 Md. at 210, 378 A.2d at 1101 (citations and quotation omitted). As demonstrated by the record, summarized again below, Petitioner's pursuit of his legal claims, just as in *Walko,* was "hardly one of vigilance."

The breach encompassed in the first count of Petitioner's complaint must have occurred no later than August 31, 2002, the date upon which the contract expired by its own terms. Any breach of the non-compete provision must have occurred prior to August 31, 2005, three years after Dr. Dhanda's termination from employment. The statute of limitations on the claims expired, therefore, at the very latest, on August 31, 2005, and August 31, 2008, respectively. Petitioner filed his petition to compel arbitration in Baltimore City on April 29, 2005. After receiving the Court's order permitting arbitration in 2006, he delayed two years, until March 2008 to actually submit the claim to the court-appointed arbitrator. After the arbitration award was issued in June of 2008, and Petitioner, under his own logic could "go to court," he waited another nine months before filing in the Circuit Court for Montgomery County on March 16, 2009. Therefore, we hold that when Petitioner filed his cause of action nearly six years after the termination of the contract, and more than three years after the expiration of the non-compete provision, his action was time-barred, as a matter of law. It is more than feasible that arbitration could have been completed before the expiration of the three-year statute of limitations, and nothing prevented Petitioner from filing his claims and requesting a stay if timely arbitration was in doubt. Thus, while completion of arbitration may have represented a condition precedent to litigation, because of Petitioner's failure timely file in court he "cannot be heard to complain now for [his] own tarriance." *See Walko,* 281 Md. at 215, 378 A.2d at 1104 (citation omitted).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE**

COURT OF SPECIAL APPEALS TO BE PAID BY PETI-
TIONER.