**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1724**

GERALD JEANDRON,

Plaintiff – Appellant,

v.

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF MARYLAND;
UNIVERSITY SYSTEM OF MARYLAND; UNIVERSITY OF MARYLAND;
WALLACE D. LOH, Ph.D., in his official capacity as
President of the University of Maryland, College Park;
SALLY S. SIMPSON, Ph.D., Individually, and in her official
capacity as Department Chair; RAYMOND PATERNOSTER, Ph.D.,
Individually, and in his capacity as Professor of
Criminology and Criminal Justice,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Roger W. Titus, District Judge.
(8:11-cv-02496-RWT)

Submitted: January 31, 2013     Decided: February 14, 2013

Before SHEDD, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Frederick B. Goldberg, FRED B. GOLDBERG, PC, Bethesda, Maryland;
Mark L. Rosenberg, LAW OFFICES OF MARK L. ROSENBERG, Bethesda,
Maryland, for Appellant. Douglas F. Gansler, Attorney General
of Maryland, Sally L. Swann, Assistant Attorney General, Holly

Elizabeth Combe, Staff Attorney, Baltimore, Maryland, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gerald Jeandron filed an action against the Board of Regents of the University System of Maryland; the University of Maryland at College Park (UMCP); University of Maryland President Loh in his official capacity; Sally Simpson, Department of Criminology and Criminal Justice Chair, in her official and individual capacity; and Raymond Paternoster, Professor of Criminology and Criminal Justice, in his individual and official capacity. Jeandron raised four counts in his complaint: count one, violation of the Americans with Disabilities Act (ADA); count two, violation of the Rehabilitation Act; count three, breach of contract; and count four, tortious conspiracy to breach contract.

Jeandron is blind and is disabled under the ADA. Jeandron was previously accepted into the graduate studies program of the Department of Criminology and Criminal Justice Studies (CCJS). In 2007, he filed an action under the ADA and the Rehabilitation Act alleging discrimination against him by University of Maryland and other named defendants. The parties settled the lawsuit by written agreement entered on June 20, 2007. The agreement provided $250,000 to Jeandron for him to purchase and provide all accommodations to assist him in completing his program to obtain a Ph.D. The agreement also specified that Jeandron was still subject to all the rules,

3

procedures, and practices of the University of Maryland System, including, but not limited to, time limitations for completing his degree and rules pertaining to satisfactory progress toward his degree.

After executing the settlement agreement, Jeandron continued to pursue his doctorate at UMCP. Dr. Paternoster served as Jeandron's dissertation advisor. In July 2008, Jeandron attempted to register for Fall 2008 classes but was unable to due to a "financial hold" on his account. Later, but prior to September 8, 2008, Jeandron alleges that he could not register for classes because the University had placed an "academic hold" on his account. On September 10, 2008, Dr. Denise Gottfredson, former graduate director of CCJS at UMCP, emailed Jeandron to confirm that the University had previously dismissed him from the CCJS graduate program. On September 7, 2011, Jeandron filed the subject lawsuit.

The Defendants filed a motion to dismiss or, in the alternative, for summary judgment. The Defendants alleged that Jeandron's action is barred by the three-year statute of limitations because various documents were sent to Jeandron in 2007 and early 2008 regarding his failure to progress and his termination from the program. On December 18, 2007, Dr. Gottfredson sent Jeandron a letter at his home address advising him that his progress was unsatisfactory because he had not

4

submitted three chapters of his dissertation to his advisor. The letter also referred to a May 29, 2007 letter that advised Jeandron that he had not met the department's standards for satisfactory and timely progress for a second consecutive semester and that, if he continued to perform below the standard, he would be dismissed from the CCJS graduate program. The letter concluded that "[i]f we do not hear from you on or before Tuesday, January 8, 2008, this letter stands as notice of the department's decision to terminate your enrollment in the CCJS Ph.D. Program."

On January 8, 2008, Dr. Gottfredson sent another letter to Jeandron, by certified mail to his home address. The letter informed Jeandron that his enrollment in the program was terminated at the close of the Fall 2007 semester. Lillian Bradley confirmed receipt of the letter by signing for it on January 10, 2008.[1] On February 1, 2008, the Assistant Dean sent a letter to Jeandron at his home address stating that Jeandron had been terminated as a graduate student of UMCP due to his "failure to complete the requirements essential to the degree . . . ."

All the Defendants moved to dismiss the complaint in its entirety based on the statute of limitations, or in the

---

[1] Jeandron lived in an apartment building with a mailroom.

5

alternative for summary judgment as a matter of law. Jeandron opposed the motion and contended that he did not receive any of the letters from the University from December 2007 forward. He claims that he was first on notice that he was terminated from the program on September 8, 2008, when he received an email after the academic hold was placed on his account in July 2008.

The district court held a hearing on the motion to dismiss or, in the alternative, for summary judgment. The court heard from counsel and considered the motion and response and the materials, including Jeandron's affidavit claiming not to have received notice of termination until September 8, 2008. The district court concluded that all the claims were barred by the statute of limitations. The court relied on evidence that a letter informing Jeandron of his termination was sent by certified mail and that the return receipt was signed for by a person identified as Lillian Bradley, and that there was no requirement to send the letter by restricted delivery (unlike service of process requirements).[2] The court found letters were also sent on December 18, 2007, January 8, 2008, and February 1, 2008.

---

[2] The district court mistakenly identified the certified letter as sent on December 18, 2007. The certified letter was sent on January 8, 2008. The mistake, however, is inconsequential.

6

The court also considered the University's published requirements for obtaining a Ph.D., which were not in the record before the hearing, but which the court included as part of its ruling. The University had a continuous enrollment requirement that graduate students must register for continuing courses in the Fall and Spring, unless a waiver is given. The court found that the notices were given "in the ordinary manner" and that there is no requirement to prove actual receipt. The court went on to hold that a reasonably alert Ph.D. candidate would be on notice given the academic hold and the presumed knowledge of the continuous registration requirements. The court relied on the multiple notifications to conclude that the entire complaint was barred by the statute of limitations.

This court reviews de novo the district court's order granting a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 179-80 (4th Cir. 2009). This court has stated:

> [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot plead any set of facts in support of his claim entitling him to relief.

Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

The court reviews de novo a district court's order granting summary judgment. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). Summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment" is proper. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (citations omitted).

The ADA and Rehabilitation Act do not provide a statute of limitations. Accordingly, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. See <u>A Soc'y Without A Name v. Virginia</u>, 655 F.3d 342, 347 (4th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1960 (2012). Maryland courts apply the three-year limitations period governing general civil actions to ADA and Rehabilitation Act claims. <u>Schalk v. Associated Anesthesiology Practice</u>, 316 F. Supp. 2d 244, 251 (D. Md. 2004); <u>Kohler v. Shenasky</u>, 914 F. Supp. 1206, 1211 (D. Md. 1995). The remaining counts of Jeandron's complaint fall under the Maryland three-year statute of limitations for general civil actions as

8

well.  See Md. Cts. & Jud. Proc. Code Ann. § 5-101; Hartnett v. Schering Corp., 2 F.3d 90, 92 (4th Cir. 1993); Shailendra Kumar, P.A. v. Dhanda, 43 A.3d 1029, 1033–34 (2012) (applying the three-year statute of limitations to a breach of contract).

A cause of action for discrimination cases accrues on the date that the alleged unlawful conduct occurred.  Martin v. Southwestern Virginia Gas Co., 135 F.3d 307, 310 (4th Cir. 1998).  The unlawful practice occurs when the plaintiff is informed of the allegedly discriminatory practice or decision.  Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980).  For the state tort claims, under Maryland's general discovery rule, the statute of limitations begins to run when the allegedly tortious conduct is discovered — that is, when the plaintiff "in fact knew or reasonably should have known of the wrong."  Pennwalt Corp. v. Nasios, 550 A.2d 1155, 1160 (Md. 1988) (quoting Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981) (applying the discovery rule to all tort claims)).  Actual knowledge, either express or implied, is required to find that a tort was discovered within the meaning of the rule.  Poffenberger, 431 A.2d at 681.  Because implied actual knowledge is sufficient to start the limitations period, courts consider the three years to begin when a plaintiff is on inquiry notice.  Inquiry notice arises "when a plaintiff gains knowledge

sufficient to prompt a reasonable person to inquire further." Pennwalt, 550 A.2d at 1163.

It is undisputed that, at the very least, Dr. Gottfredson's letter of January 8, 2008, was received at Jeandron's address. Further, Jeandron should have been on notice that he was terminated if he had attempted to register for Spring 2008 courses, which he was required to do under the settlement agreement and under University policies. He did not register, even though he was on notice of the University's requirement of continuous progress and registration in furtherance of a graduate student's degree. Accordingly, the district court concluded that Jeandron was on inquiry notice before the Spring 2008 semester and that a reasonable investigation undertaken at the time would have revealed his termination from the program.

On appeal, Jeandron assigns error to the district court's consideration of the continuous enrollment requirement that the court found on the University's web site. The court included the materials it considered in its order. At the hearing, the court discussed with both parties the information it found on the University's policy, although that policy itself had not previously been made part of the record by either party. A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's

10

authenticity is not in dispute and "it is capable of accurate and ready determination." Fed. R. Evid. 201(b); see O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that it is not uncommon for courts to take judicial notice of factual information found on the world wide web").

Jeandron did not lodge an objection at the hearing to the court's consideration of the University policy found on the University's web site, except to say whether the University follows the policy is hearsay. Further, counsel admitted that Jeandron was aware of the requirement discussed in the materials and considered by the court. The satisfactory progress requirement is also specifically noted in the settlement agreement. There is no disagreement over the accuracy of the factual information that the district court relied upon. Granting broad deference to the district court and reviewing for an abuse of discretion, the district court did not err in consideration of the materials. See United States v. Myers, 280 F.3d 407, 413 (4th Cir. 2002) (the district court's admission of evidence must be reviewed with broad deference); United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (the district court's decision to admit evidence will be overturned only "under the most extraordinary of circumstances.").

Jeandron also raises judicial bias related to the court's reliance on the continuous registration requirement.

11

Jeandron argues that the court's consideration and reliance on the requirement led it to accuse Jeandron of being unreasonable and the court inappropriately blamed him for not receiving the termination letters. Jeandron contends that the court predetermined the outcome of the case and denied him a fair hearing. This claim is patently without merit. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Moreover, even in the context of a jury trial,

> judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality charge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Id.. The continuous registration requirement was properly admitted, as discussed above, and even if it were considered an extra-judicial source, Jeandron has not established that the court's conduct during the course of the hearing was so highly antagonistic "as to make fair judgment impossible." Liteky, 510 U.S. at 556.

Lastly, Jeandron argues that the court erred in ruling under either Rule 12(b)(6) or Rule 56 that he had receipt of the

12

letters sent by the Defendants.[3]  Jeandron argues that had the court accepted as true his claims under Rule 12(b)(6), the court should have found that his claim was timely filed.  Under Rule 56, Jeandron claims that there is a factual dispute as to his receipt of the 2007 and 2008 letters, and therefore summary judgment is improper.  A self-serving affidavit, without more, is not sufficient to defeat summary judgment.  See Nat'l Enterprises, Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000).  We conclude, however, that the court's decision may be affirmed on the basis of reasonable inquiry alone, and therefore, even had there been a factual dispute as to actual receipt of the letters of termination from the graduate program, it did not affect the statute of limitations issue.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[3] It is unclear whether the court dismissed under Rule 12(b)(6) or granted summary judgment under Rule 56.  The court stated that it was granting the Defendants' motion to dismiss and/or for summary judgment.