**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1663

PRIORITY 1 AUTOMOTIVE GROUP, INC., d/b/a BMW of Towson,

        Plaintiff – Appellant,

v.

CDK GLOBAL, LLC,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge.  (1:21-cv-01309-SAG)

Argued:  May 8, 2025                    Decided:  August 12, 2025

Before HARRIS, RICHARDSON, and HEYTENS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Carmine Joseph Castellano, HODGSON RUSS LLP, New York, New York, for Appellant.  Michael Anthony Scodro, MAYER BROWN LLP, Chicago, Illinois, for Appellee.  **ON BRIEF:**  Britt M. Miller, Matthew D. Provance, MAYER BROWN LLP, Chicago, Illinois, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is a breach-of-contract action under Maryland law.  In 2015, the defendant, CDK Global, allegedly breached a sales contract with the plaintiff, Priority 1.  Six years later, in 2021, Priority 1 sued.  But Maryland's statute of limitations allows only three years to sue.  Md. Code, Cts. & Jud Proc. § 5-101.  So Priority 1 asks us to apply an exception to this rule, which Maryland courts call the "continuing harm doctrine."  *Cain v. Midland Funding, LLC*, 256 A.3d 765, 791 (Md. 2021).  Priority 1's reliance on this doctrine is misplaced.  Maryland's apex court has never applied the doctrine to a contract claim like Priority 1's, and our *Erie* guess is that it would not take that step.  So we affirm the district court's judgment rejecting Priority 1's claim for untimeliness.[*]

Priority 1 sells cars.  It operates a network of dealerships across Maryland.  CDK Global is a software and hardware company.  It provides "dealership management systems" to car dealers.  These are computer systems that help dealerships track and process sales, service, inventory, accounting, and more.  For the system to work, it needs access to a dealership's data.  And it often needs to be integrated with other, third-party software and hardware systems that a dealership also uses.

This case arises out of the contract under which CDK provided a dealership management system to Priority 1.  Besides arranging for CDK to sell and operate that system for Priority 1, the contract took steps to protect Priority 1's data.  It provided that

---

[*] The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.  We review its summary judgment *de novo*.  *Schulman v. Axis Surplus Ins. Co.*, 90 F.4th 236, 243 (4th Cir. 2024).

2

CDK would gain no property interest in data that Priority 1 might generate by using the system. And it forbade CDK to "use any of the [Priority 1] data to create or supply revenue generating services without [Priority 1's] written consent." J.A. 180. This version of the contract was inked in 2015.

Soon after, in 2015 or 2016, CDK rolled out a new security protocol for dealership management systems. Ostensibly fearing cyberattacks, it locked out of Priority 1's system third-party applications that Priority 1 relied on to do its business. To get in, the vendors that provided those applications would have to pay CDK access fees. The vendors paid up, but they also began passing the access fees on to Priority 1 by adding surcharges to their invoices.

In 2021, Priority 1 sued CDK for breach of contract. In Priority 1's telling, the security protocol was a "revenue generating service[]" for CDK because CDK used it to generate access fees from third-party vendors. But in Maryland, actions for breach of contract must normally be brought no more than three years after a would-be plaintiff learns of the breach. *Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029, 1033–34 (Md. 2012). And Priority 1 has known that CDK charged third-party vendors fees to access the Priority 1 system since at least 2016. So ordinarily, we would expect Priority 1 to sue no later than 2019.

Priority 1 replies, however, that its suit is still timely because CDK continues to operate its security protocol and charge access fees and has therefore been in continuous breach of the contract for the last decade. This, Priority 1 claims, brings its suit within what Maryland courts have called the "continuing harm doctrine," which provides that

3

"ongoing violations will not be barred by the statute of limitations merely because one or more of them occurred earlier in time." *Cain*, 256 A.3d at 792.

We do not think Maryland courts would accept this theory. As an initial matter, we note that even if Priority 1's claim fell within this doctrine, it would not be able to sue for all breaches of the contract dating back to 2016. Maryland's continuing harm doctrine only allows plaintiffs to sue for those breaches that occurred within the limitation period—here, three years back in time from 2021, when Priority 1 sued. *See Litz v. Maryland Dep't of Env't*, 76 A.3d 1076, 1089 (Md. 2013).

More fundamentally, we have no reason to think Maryland courts would apply the doctrine at all to breach of contract actions. Indeed, Maryland's highest court was asked in *Cain* to apply the doctrine to an action collaterally attacking a judgment on a contract. But the court refused, clarifying that the doctrine applies only "in limited contexts" like trespass, nuisance, and fraud, and requires "a *tortfeasor's* sequential breaches of an ongoing duty." 256 A.3d at 793, 791 (emphasis added); *see also Litz*, 76 A.3d at 1090 ("[T]he continuing harm doctrine [applies] in cases of ongoing trespass and negligence."). Because Maryland's highest court has only applied the doctrine in tort cases, and has refused to apply the doctrine in contract cases, we do not think it would apply the doctrine here.

Resisting this conclusion, Priority 1 points us toward a decision of Maryland's intermediate appellate court, *Singer Co. v. Baltimore Gas & Elec. Co.*, 558 A.2d 419 (Md. Ct. Spec. App. 1989). In *Singer*, the Court of Special Appeals arguably did apply continuing-harm reasoning to a contract case. There, the defendant "had an ongoing

4

contractual obligation to supply [plaintiff] with electrical power." *Id.* at 426. But the defendant consistently dropped coverage over a few years in the 1980s, and the court held that "where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations." *Id.* In other words, the court essentially applied a *Cain*-type continuing-harm rule in a contract case.

But even supposing Maryland's highest court were to adopt the reasoning of this decades-old intermediate appellate decision, we do not think it would save Priority 1's claim. *Singer* makes clear that in order to rely on the continuing harm doctrine, a plaintiff must point to "successive breach[es]" of the contract, such that each one can restart the statute of limitations. *Id.* And Priority 1 does not point to any. Its claim is that CDK began a new security initiative nearly a decade ago and continuously operated it through 2021. But the contract does not forbid CDK to operate a "revenue-generating service"; it forbids CDK to "use" Priority 1 data to "create or supply" a "revenue-generating service[]." J.A. 180. CDK may have used Priority 1 data to create the security protocol back in the mid-2010s. And it may continue to operate that protocol and bill access fees to third parties. The continuous billing may *harm* Priority 1. But Priority 1 does not say how sending an invoice is a "use" of its protected data. And *Singer* requires not just ongoing harm but distinct *breaches* of the contract that cause that harm. Without identifying any distinct "use[s]" of Priority 1 data within the limitation period, Priority 1 can find no help in *Singer*.

5

Because we doubt that Maryland's highest court would both apply its continuing-harm rule in contract cases *and* apply a version of that rule contrary to the one explained in *Singer*, our best *Erie* guess is that Priority 1's claim is untimely as a matter of Maryland law. So the district court's judgment is

*AFFIRMED.*