*Caruso Builder Belle Oak, LLC v. Ronalda Sullivan*, No. 2, September Term, 2024. Opinion by Eaves, J.

**MD. CODE ANN., REAL PROPERTY § 14-117(a)(3)(i) – ACCRUAL OF CLAIMS**

Section 14-117(a)(3)(i) of the Real Property Article ("RP") of the Annotated Code of Maryland requires that contracts for the initial sale of real property located in Prince George's County, where "there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable[,]" disclose to the purchaser eight pieces of information. A violation of that provision entitles an aggrieved purchaser to immediately pursue statutorily enumerated remedies under RP § 14-117(b)(2).

In this case, Caruso Builder Belle Oak, LLC ("Caruso") entered into a contract with Ronalda Sullivan on July 17, 2015, for a qualifying piece of real property that was subject to RP § 14-117(a)(3)(i). Caruso provided a noncompliant disclosure on that date, and the parties settled on the contract on February 24, 2016. Ms. Sullivan filed a complaint against Caruso on February 22, 2019, seeking monetary penalties under RP § 14-117(b)(2)(i). The Supreme Court of Maryland held that a seller's violation of RP § 14-117(a)(3)(i) gives rise to a cause of action because the aggrieved purchaser suffers an informational harm, and RP § 14-117(b)(2)(i)–(iii) provides corresponding remedies. Because Ms. Sullivan knew or should have known that, at the time of contract, Caruso's disclosure was noncompliant, and because Ms. Sullivan had at least one remedy available to her, Maryland's general, three-year statute of limitations began to run on July 17, 2015. Thus, her claim against Caruso was barred by the applicable statute of limitations.

IN THE SUPREME COURT

OF MARYLAND

No. 2

September Term, 2024

---

CARUSO BUILDER BELLE OAK, LLC

v.

RONALDA SULLIVAN

---

Fader, C.J.,
Watts,
Booth,
Biran,
Eaves,
Wilner, Alan M., (Senior Justice, Specially Assigned),
Hotten, Michele D., (Senior Justice, Specially Assigned),

JJ.

---

Opinion by Eaves, J.

---

Filed: January 28, 2025

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

Buying a home is a significant undertaking, and homebuyers want information disclosed up front to make informed decisions about their ability to afford a home. This case concerns water and sewer assessments—important information in the homebuying process.

Pursuant to § 14-117(a)(3)(i) of the Real Property Article ("RP") of the Annotated Code of Maryland (2023 Repl. Vol.) (the "Disclosure Act"), a contract for the initial sale of real property located in Prince George's County, where "there are deferred private water and sewer assessments . . . for which the purchaser may be liable[,]" must disclose eight pieces of information to the purchaser. These deferred water and sewer assessments are costs incurred by private companies that have assumed responsibility from a county government "in the development processes of constructing infrastructure for water and sewer lines."[1]

On July 17, 2015, Petitioner, Caruso Builder Belle Oak, LLC ("Caruso"), a residential real estate builder, and Respondent, Ronalda Sullivan, a homebuyer, entered into a contract for Ms. Sullivan to purchase a home in Prince George's County. Along with the contract, Caruso provided Ms. Sullivan with a disclosure for deferred water and sewer assessments, and the parties went to settlement on the contract in February 2016.

---

[1] Joseph N. Schaller & Shannon D. Sentman, *Private Water and Sewer Assessment Companies*, 39-Oct. Md. B.J. 36, 37 (2006). These deferred water and sewer assessments are secured "by recording an instrument among the land records of the applicable county . . . in the form of a declaration of deferred water and sewer charges[,]" which "establishes a lien that runs with the land to secure the assessments[.]" *Id.*

Nearly three years after settlement, in February 2019, Ms. Sullivan filed a cause of action against Caruso,[2] alleging that the required disclosure was noncompliant.

The parties agree that a cause of action for Caruso's noncompliance is subject to Maryland's general, three-year statute of limitations, codified at § 5-101 of the Courts and Judicial Proceedings Article ("CJP") (2020 Repl. Vol.). We granted a writ of certiorari in this case to determine when the three-year period of limitations begins for a cause of action for a violation of the Disclosure Act.[3] Caruso argues that Ms. Sullivan's claim accrued at the time the parties entered into the contract for the sale of real property, while Ms. Sullivan contends that her claim accrued on the date of settlement because that is the earliest date for which she became liable for the deferred water and sewer charges. The answer determines whether CJP § 5-101's statute of limitations bars Ms. Sullivan's claim for Caruso's noncompliance with the Disclosure Act.[4]

We hold that Ms. Sullivan's cause of action for Caruso's Disclosure Act violation accrued at the time the parties entered into the contract because that is the date on which (1) the single element of Ms. Sullivan's cause of action was complete and (2) Ms. Sullivan knew or should have known of Caruso's noncompliance, permitting her to maintain a

---

[2] In her original complaint, Ms. Sullivan sued two entities: Caruso Builder Belle Oak, LLC, and Caruso Homes, Inc. The latter entity eventually was dismissed from the litigation because it was not a real party in interest, leaving only the former on appeal.

[3] *Caruso Builder Belle Oak, LLC v. Sullivan*, 486 Md. 388 (2024).

[4] At oral argument, counsel for Caruso conceded that a monetary figure it was required to disclose as one of the eight pieces of information was "incorrect." Counsel stated that the incorrect figure formed the basis for the violation of the Disclosure Act alleged in Ms. Sullivan's complaint.

successful action against Caruso. In so holding, we reverse the judgment of the Appellate Court of Maryland and remand to that court with instructions to affirm the judgment of the Circuit Court for Prince George's County, which granted Caruso's motion to dismiss for failure to state a claim upon which relief could be granted.

## II
## BACKGROUND

We begin with an overview of the pertinent provisions of RP § 14-117 before addressing the factual background and procedural history.

### A.      *Pertinent Provisions of RP § 14-117*

The Disclosure Act requires, among other things, the initial seller of residential real property located in Prince George's County to make certain disclosures. The pertinent provision states:

> In Prince George's County, a contract for the initial sale of residential real property for which there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure that includes:
>
> 1. The existence of the deferred private water and sewer assessments;
>
> 2. The amount of the annual assessment;
>
> 3. The approximate number of payments remaining on the assessment;
>
> 4. The amount remaining on the assessment, including interest;
>
> 5. The name and address of the person or entity most recently responsible for collection of the assessment;
>
> 6. The interest rate on the assessment;
>
> 7. The estimated payoff amount of the assessment; and

3

8. A statement that payoff of the assessment is allowed without prepayment penalty.

RP § 14-117(a)(3)(i). Section 14-117 provides for three enumerated remedies. If a seller does not provide a compliant disclosure, then a purchaser can:

(i) Recover from the seller the total amount of deferred charges the purchaser will be obligated to pay following the sale;

(ii) Recover from the seller any money actually paid by the purchaser on the deferred charge that was lost as a result of a violation of subsection (a)(3) of this section; or

(iii) If the violation is discovered before settlement, rescind the real estate contract without penalty.

*Id.* § 14-117(b)(2).

Our appellate courts previously have discussed the General Assembly's purpose in enacting the Disclosure Act. *See generally Elsberry v. Stanley Martin Cos.*, 482 Md. 159 (2022); *Sullivan v. Caruso Builder Belle Oak, LLC*, 251 Md. App. 304 (2021) ("*Sullivan I*"). The General Assembly was concerned with, among other things, the "deferred water and sewer rates [charged] by private developers in . . . Prince George's County[]" and the practices by which those charges were assessed. *Elsberry*, 482 Md. at 191; *see also Sullivan I*, 251 Md. App. at 329–31 (detailing concerns raised by homeowners at a meeting held by a task force commissioned by the General Assembly, which were included in the task force's recommendation, and adopted "almost verbatim as [RP] § 14-117(a)(3)(i)[]").

**B.     Factual Background**

As part of the homebuilding process, Caruso "constructs and installs (or contracts with a third party to construct and install) water and sewer utility facilities . . . to each house

4

and connects the water and utility facilities to the public facilities." Caruso then passes on the costs associated with that construction to each "new home purchaser in the form of annual water and sewer assessment[s.]" The party that constructs the water and sewer lines then records a declaration, "establishing a lien on the water and sewer assessment which requires a new home purchaser to pay the water and sewer assessment annually over many years."

On July 17, 2015, Ms. Sullivan entered into an Agreement of Purchase and Sale (the "Contract") with Caruso for the sale of real property located in Prince George's County (the "Property"), which is subject to a declaration of deferred water and sewer charges.[5] That declaration was recorded in the land records for Prince George's County. Attached to the Contract was a document titled, "Statutory Disclosure." The prefatory paragraph to that disclosure reads:

> **THIS DISCLOSURE ADDENDUM CONTAINS IMPORTANT DISCLOSURES AND INFORMATION REQUIRED TO BE GIVEN TO YOU BY LAW. PLEASE READ THEM CAREFULLY. BY THE SIGNATURE OF THE PURCHASER SET FORTH BELOW, PURCHASER HEREBY ACKNOWLEDGES RECEIPT OF THE FOLLOWING STATUTORY DISCLOSURES AND INFORMATION:**

Item three in the Statutory Disclosure, titled, "Disclosure Required Under Section 14-117 Estimated Deferred Water and Sewer Charges," reads as follows:

> The Purchaser is hereby advised, pursuant to the provisions of Section 14-117 of the Real Property Article of the Annotated Code of Maryland that the

---

[5] Various filings throughout this litigation have indicated that the parties entered into the Contract on July 13, 2015. That date is, however, the date that *Ms. Sullivan* signed the Contract. The first paragraph on the first page of the Contract states that the offer date is July 13, 2015. The last page of the Contract indicates that the effective date of the Contract is the date that Caruso signs it, which, in this case, was July 17, 2015.

5

Seller shall disclose the estimated cost as established by the appropriate water and sewer authority (which includes a person to which the duties and responsibilities of the Washington Suburban Sanitary Commission have been delegated by a written agreement or in accordance with a local ordinance) of any deferred water and sewer charges for the Property for which the Purchaser may become liable. There are deferred water and sewer charges for the Property for which the Purchaser will become liable. Please see "Notice to Purchaser of Deferred Water and Sewer Charges" attached to the Agreement. The following additional information is hereby disclosed:

l. As stated above, there are deferred private water and sewer assessments;

2. The amount of the annual assessment [is] $900.00;

3. The approximate number of payments remaining on the assessment is 23 years;

4. The amount remaining on the assessment, including interest is $20,700;

5. The name and address of the person or entity most recently responsible for collection of the assessments is: Belle Oak Utilities, LLC c/o Sandy Excavating, 4230 Ray Road, LaPlata, Maryland 20646;

6. The interest rate on the assessments is 8 percent;

7. The estimated payoff amount of the assessment is $20,700;

8. The payoff of the assessment is allowed without prepayment penalty.

Another attached document, the Addendum to Agreement of Purchase and Sale Notice to Purchaser of Deferred Water and Sewer Charges ("Addendum 11"), further notified Ms. Sullivan that the "Property is subject to annual assessments . . . related to certain water and sewer systems[.]" Addendum 11 further noted that the annual assessment of $900 was due each year, for 23 years, on January 31 to either a private utility company or its assignee.

Ms. Sullivan signed or initialed each page of the Statutory Disclosure and

6

Addendum 11 on the same date that she signed the Contract—July 13, 2015.

The parties settled on the Property on February 24, 2016. While Ms. Sullivan made an initial payment on the deferred water and sewer charges at the time of settlement, she did not receive her first water and sewer bill from the utility company until "[m]onths after her settlement[.]" According to Ms. Sullivan, it was at this point that she "discovered that she could have paid off her entire water and sewer assessment, at settlement, at a substantial discount by paying the present value of her future obligation to pay $900 per year for 23 years."

## C.    *Procedural History*

### 1. The Circuit Court for Prince George's County

Ms. Sullivan filed her initial class action complaint on February 22, 2019. In the operative Second Amended Class Action Complaint, filed in October 2021, Ms. Sullivan, and all others similarly situated, alleged that Caruso violated the Disclosure Act because Caruso did not include a "good[-]faith" estimated payoff amount when it listed $20,700 as both the present value owed and the "amount remaining on the assessment, including interest." "By disclosing the same dollar amount for" both options, Ms. Sullivan alleged that "Caruso affirmatively misrepresented that there would be no financial benefit to [her] to pay off the entire water and sewer assessment at settlement." Ms. Sullivan and the class members sought damages pursuant to RP § 14-117(b)(2)(i).[6]

---

[6] This case has twice been to the Appellate Court of Maryland. In the first round of litigation, in response to the original complaint, Caruso filed a motion to dismiss. Before the circuit court ruled on that motion, Ms. Sullivan filed her First Amended Class Action Complaint, to which Caruso filed a Renewed Motion to Dismiss. In a memorandum

7

That same month, Caruso filed a motion to dismiss and request for hearing, arguing that Ms. Sullivan's claim was barred by CJP § 5-101's three-year statute of limitations. Caruso argued that Ms. Sullivan's claim accrued on the date she entered into the Contract with Caruso—July 17, 2015—because that is the date on which the sole element for a violation of the Disclosure Act was met. Because Ms. Sullivan's claim was filed outside that three-year window, on February 22, 2019, her claim was barred. In her opposition, Ms. Sullivan asserted that her claim for damages under RP § 14-117(b)(2)(i) accrued—at earliest—on the date of settlement because that is the date on which she became "obligated to pay [the deferred] water and sewer charges."

---

opinion, the circuit court granted in part and denied in part Caruso's motion. The circuit court concluded, among other things, that the "General Assembly did not mandate a specific formula or manner of calculating 'the estimated payoff amount of the assessment,' and that [Caruso's] disclosure of $20,700 complie[d] with the requirements of [RP] § 14-117(a)(3)(i)(7)[]" because that section "d[id] not require a present-day valuation [to] be conducted by the seller." The circuit court, therefore, agreed that Ms. Sullivan's complaint should be dismissed for failure to state a claim but rejected Caruso's argument that the circuit court was without jurisdiction due to an arbitration clause in the Contract. Ms. Sullivan timely appealed. In interpreting RP § 14-117(a)(3)(i)(7), the Appellate Court stated:

> [T]o satisfy the disclosure requirement of [the statute], we hold that the estimate must reflect a good[-]faith calculation of the advance payoff amount that would be due on the settlement date. It is unambiguous that the General Assembly intended that the disclosure for the "estimated payoff amount" be made in good faith and fairly accurate to notify the purchaser that she has the option to save money by prepaying the assessment in full at the time of settlement.

*Sullivan I*, 251 Md. App. at 326. Based on that interpretation, the Appellate Court held that "[w]hile the Amended Complaint [was] not a model of clarity, the allegations [were] adequate to state a claim upon which relief may be granted." *Id.* at 334. Upon remand, Ms. Sullivan filed her Second Amended Class Action Complaint, which is now the subject of this appeal.

8

In a January 2022 order, the circuit court denied Caruso's motion without a hearing. Roughly one week later, Caruso filed a motion to alter or amend the circuit court's decision, incorporating its earlier filed motion to dismiss. Ms. Sullivan opposed the motion to alter or amend, but the circuit court, in a one-page, February 2022 order, granted Caruso's motion to alter or amend and dismissed Ms. Sullivan's Second Amended Class Action Complaint. Ms. Sullivan timely appealed.

### 2. The Appellate Court of Maryland

In an unreported opinion, the Appellate Court of Maryland reversed the circuit court. *Sullivan v. Caruso Builder Belle Oak, LLC*, No. 153, 2024 WL 353625, at *1 (Md. Ct. App. Jan. 31, 2024) ("*Sullivan II*"). The court stated that, to "determine when Ms. Sullivan's claim that Caruso violated RP § 14-117(a)(3)(i) accrued, [it had to] look to the remedial provision under which Ms. Sullivan [sought] to recover, RP § 14-117(b)(2)(i), and determine when each element of the cause of action occurred." *Id.* at *5.

In the court's view, "a cause of action under" RP § 14-117(b)(2)(i) "has two elements[:]" (1) "a violation of RP § 14-117(a)(3)(i), which occurs when a seller makes a deficient disclosure regarding the deferred water and sewer charges in the contract for the initial sale of residential property[]" and (2) the purchaser becomes liable to pay the deferred water and sewer assessments, which can occur only *after* settlement occurs. *Id.* The Appellate Court focused on the phrase "following the sale" in RP § 14-117(b)(2)(i), which, in its view, contemplated that settlement must have occurred. *Sullivan II*, 2024 WL 353625, at *5. Therefore, "the earliest date that the purchaser incurs damages, meeting all elements of a cause of action under RP § 14-117(b)(2)(i), and commencing the statute of

9

limitations, is the date of settlement." *Id.*

To support that interpretation, the court looked to the remaining remedy provisions under RP § 14-117(b)(2). Because subsection (b)(2)(ii) permits a purchaser to recover money actually paid, the court likewise reasoned that "[a] claim under section (ii) . . . also accrues on the date of settlement, [because] a purchaser cannot pay the deferred water and sewer charges until they take possession of the property and incur the obligation to pay said charges." *Id.* at *6. With respect to subsection (b)(2)(iii), however, the court believed that the accrual date was different because it "presents a distinctively pre-settlement remedy," permitting a purchaser to rescind the contract without penalty. *Id.* "The date of accrual for a claim under RP § 14-117(b)(2)(iii), therefore, is the date that all elements of the claim have been met, i.e., discovery of the violation before settlement." *Id.*

Because Ms. Sullivan sought remedies under RP § 14-117(b)(2)(i), the Appellate Court held, she had three years from the date of settlement to file her claim. And, because her claim was filed within that window, the Appellate Court determined that her action was timely under the applicable statute of limitations in CJP § 5-101 and reversed the circuit court. *Id.* at *7.

### III
### STANDARD OF REVIEW

A court may dismiss a complaint if it fails "to state a claim upon which relief can be granted[.]" Md. Rule 2-322(b)(2). We review the grant of a motion to dismiss for failure to state a claim for legal correctness without deference to the lower courts. *Elsberry*, 482 Md. at 178. "[A] motion to dismiss ordinarily should not be granted . . . on the assertion

10

that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz v. Md. Dep't of the Env't*, 434 Md. 623, 641 (2013). This corresponds with our obligation, in assessing the propriety of the grant of a motion to dismiss, to "assume[] the truth of all well-pleaded facts in the complaint and all reasonable inferences drawn therefrom." *In re Hosein*, 484 Md. 559, 572 (2023). The parties disagree sharply over how to interpret various provisions of RP § 14-117 and over when a cause of action for a violation of the Disclosure Act accrues. Issues of statutory interpretation are reviewed *de novo*, *Elsberry*, 482 Md. at 178, and "the question of accrual [under CJP] § 5-101 is left to judicial determination[,]" *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 193 (2012) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Strum*, 360 Md. 76, 95 (2000)). Thus, our review in this case entails no level of deference.

## IV
## ANALYSIS

The parties agree that Maryland's general statute of limitations for civil actions governs Ms. Sullivan's complaint. That statute reads: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." CJP § 5-101. But that is where their agreement ends. Not only do the parties disagree over when Ms. Sullivan's cause of action accrues, but they disagree on a predicate point: what exactly *is* Ms. Sullivan's cause of action?

Caruso maintains that the relevant cause of action is for a violation of the Disclosure

11

Act: RP § 14-117(a)(3)(i). Thus, Caruso contends, a different cause of action does not arise under each of the three subsections of RP § 14-117(b)(2). Accepting that premise, Caruso believes that a "straightforward application" of our accrual precedent "compels the conclusion that a cause of action under [RP § 14-117(a)(3)(i)] accrues at the time of contract." This is so, Caruso argues, because (1) the Disclosure Act is the section that mandates the disclosure of certain information pertaining to deferred water and sewer charges for the sale of certain real property in Prince George's County, ; (2) the date of contract also is the date the "purchaser knows or reasonably should have known of the violation by virtue of their acceptance of the contract and agreement to be bound by its terms[,]"; and (3) RP § 14-117(b)(2) "affords immediate relief to a purchaser for a violation of the statute, [meaning that] all elements of the cause of action exist at the time of the violation[,]" allowing Ms. Sullivan to "achieve a successful result on an action under the statute."

Ms. Sullivan, on the other hand, argues that the Appellate Court was correct when it held that RP § 14-117(b)(2)(i)–(iii) provides three separate causes of action with subsections (b)(2)(i) and (ii) available to a purchaser—at the earliest—on the date of settlement, while (b)(2)(iii) is available pre-settlement. *Sullivan II*, WL 353625, at *5–7 The primary thrust of Ms. Sullivan's argument is that a purchaser does not incur any damage until the purchaser becomes liable to pay the deferred water and sewer charges, i.e., at the date of settlement. Thus, a cause of action under RP § 14-117(b)(2)(i) is not complete until a purchaser incurs that obligation, which *then* allows the statute of limitations to begin.

12

We first provide an overview of the governing law before interpreting the relevant provisions of RP § 14-117 and addressing the parties' arguments.

### A.       *Causes of Action, Remedies, and Accrual*

A cause of action and a corresponding remedy are not interchangeable terms. They are related but distinct concepts in that the remedy "is simply the means by which the cause of action is satisfied." *Hamlin Mach. Co. v. Holtite Mfg. Co.*, 197 Md. 148, 153 (1951) (quoting Black's Law Dictionary (3d ed. 1944)). Thus, one must have a valid cause of action before one is entitled to a remedy. *See* 1 Am. Jur. 2d Actions § 35 (Aug. 2024 update) ("A right and a remedy do not exist independently of a cause of action because one cannot enforce a right or obtain a remedy *without first having a cause of action*." (emphasis added)); 1A C.J.S. Actions § 27 ("The terms 'remedy' and 'cause of action' are distinguishable in that *the cause of action precedes and gives rise to the remedy*." (emphasis added) (footnote omitted)). It is, therefore, the alleged violation or wrong on the part of a defendant that gives rise to the cause of action. *See Hahn v. Claybrook*, 130 Md. 179, 183 (1917) ("Where the declaration alleges a breach of duty and a special consequential damage, *the breach of duty and not the consequential damage is the cause of action*, and the statute [of limitations] runs from the date of the former, and not from the time the special damage is revealed or becomes definite." (emphasis added) (quoting *Moore v. Juvenal*, 92 Pa. 484, 490 (1880))).

In determining when a civil cause of action accrues and, therefore, when the statute of limitations begins to run, "[t]he law is concerned with . . . testing whether all of the *elements* of a cause of action have occurred so that it is complete." *Dhanda*, 426 Md. at

13

195 (first alteration in original) (quoting *St. Paul Travelers v. Millstone*, 412 Md. 424, 432 (2010)); *see also James v. Weisheit*, 279 Md. 41, 44 (1977) ("It is clear that the test to be utilized in fixing the accrual date of a cause of action 'is to ascertain the time when [a] plaintiff could have first maintained his [or her] action to a successful result.'" (quoting *Wash., Balt. & Annapolis Elect. R.R. Co. v. Moss*, 130 Md. 198, 205 (1917))). This includes showing that some legal harm has occurred, despite whether the extent of the damage is known or whether that damage is trivial in nature. *Mattingly v. Hopkins*, 254 Md. 88, 95 (1969).

But even if all the elements for a cause of action have been met, the claim's accrual is not automatic. That is because Maryland follows the discovery rule, which states that "a claim accrues when the plaintiff '*knew or reasonably should have known* of the wrong.'" *Cain v. Midland Funding, LLC*, 475 Md. 4, 35 (2021) (emphasis added) (quoting *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)). In assessing this "knew or should have known" standard, we have stated:

> Under the discovery rule as stated in *Poffenberger*[,] limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry. As of that date, [the claimant] is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. *The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation.*

*Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000) (quoting *O'Hara v. Kovens*, 305 Md. 280, 289 (1986)). Individuals who should have known of certain facts are on "inquiry notice" of those facts' existence. *See Windesheim v. Larocca*, 443 Md. 312, 327 (2015) ("Implied notice, also known as 'inquiry notice,' is notice implied from

14

'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'" (quoting *Poffenberger*, 290 Md. at 637)). This inquiry focuses on a party's knowledge of the facts—not those facts' "legal significance[;]" "[i]gnorance of the rights [the law] grants and protects does not toll the statute of limitations." *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288, 297–98 (2003).

Thus, a cause of action does not accrue until (1) all the elements of a cause of action have been met and (2) the plaintiff knows or should know that the wrong has occurred.

### B. *Interpreting RP §14-117*

To resolve the parties' contentions, we first interpret the relevant provisions of RP § 14-117 using our traditional principles of statutory interpretation.

### 1. Principles of statutory interpretation

"[W]e start with the cardinal rule of statutory interpretation—to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute." *Elsberry*, 482 Md. at 178 (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 376 (2021)). "We assume that the General Assembly's intent is 'expressed in the statutory language' and therefore begin our analysis with the plain language of the statute." *Spevak v. Montgomery County*, 480 Md. 562, 571–72 (2022) (quoting *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 510 (2021)). We begin this task by looking to the normal, plain meaning of the text, "ensur[ing] that no word, clause, sentence or phrase is rendered

surplusage, superfluous, meaningless or nugatory." *Id.* at 572 (quoting *Moore*, 476 Md. at 510).

And while we focus on the statute's plain text, we avoid reading "statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). Instead, we "analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body[.]" *Williams v. Morgan State Univ.*, 484 Md. 534, 547 (2023) (internal quotation marks omitted) (quoting *Proctor v. Wash. Metro. Area Trans. Auth.*, 412 Md. 691, 714 (2010)). If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, "and we apply the statute as written, without resort to other rules of construction." *Lockshin*, 412 Md. at 275.

### 2. A violation of RP § 14-117(a)(3)(i) (the Disclosure Act) gives rise to the cause of action, and RP § 14-117(b)(2)(i)–(iii) provides the remedies

We agree with Caruso that a violation of the Disclosure Act gives rise to the cause of action and that a purchaser suffers an informational harm with RP § 14-117(b)(2) then providing for various remedies. Our principles of statutory interpretation guide our analysis.

In accordance with the Disclosure Act, a seller's contract for certain real property in Prince George's County "shall contain a disclosure that includes[]" eight pieces of information. RP § 14-117(a)(3)(i). This subsection alone creates the statutory duty for

16

sellers to provide certain information to a purchaser. Failure to comply with that obligation is the only element of a cause of action for a violation of the Disclosure Act.

We now move to RP § 14-117(b)(2), where the plain text confirms that subsections (b)(2)(i)–(iii) authorize three different remedies that can be pursued for a violation of subsection (a)(3)(i). Subsections (b)(2)(i)–(iii) speak in terms of monetary awards and recission, without penalty, from an otherwise valid contract. These are traditional remedies grounded in law and equity. *See Park Plus, Inc. v. Palisades of Towson, LLC*, 478 Md. 35, 56 (2022) ("[H]istorically a 'civil action at law' was filed in a court of law, and the remedy was monetary damages."); *Murray v. Midland Funding, LLC*, 233 Md. App. 254, 259 (2017) ("All claims for monetary damages are actions at law . . . ."); *Chesapeake Homes, Inc. v. McGrath*, 249 Md. 480, 487 (1968) (noting that, in a contract dispute, a mutual mistake of fact could give rise to "equitable remedies such as rescission[]"). Subsections (b)(2)(i)–(iii) say nothing about a seller's obligation or duty to a purchaser; nor do they add any elements to the cause of action. Those provisions speak solely in terms of what an aggrieved purchaser may recover or do upon a breach of the seller's statutory duty.

Ms. Sullivan improperly focuses on subsections (b)(2)(i)–(iii) individually. We agree with Ms. Sullivan that the remedies contained in subsections (b)(ii) and (iii) are post- and pre-settlement remedies, respectively.[7] As to subsection (b)(2)(i), Ms. Sullivan argues

---

[7] The plain language of those subsections confirms this reading. Subsection (b)(2)(iii) states: "*If the violation is discovered before settlement*, [a purchaser may] rescind the real estate contract without penalty." RP § 14-117(b)(2)(iii) (emphasis added). By its plain words, this remedy is available only pre-settlement. Subsection (b)(2)(ii), although not as explicit, is equally as clear. There, an aggrieved purchaser can "[r]ecover from the seller any *money actually paid by the purchaser on the deferred charge* that was lost[.]"

17

that it is available solely post-settlement. While it is less clear when the remedy contained in subsection (b)(2)(i) becomes available to an aggrieved purchaser, it is not an issue we need to address to resolve this case.[8]

But even if Ms. Sullivan's interpretation of subsection (b)(2)(i) is correct, the timing or availability of one remedy over another does not govern a cause of action's accrual. As Ms. Sullivan recognizes, the General Assembly has afforded purchasers a remedy for the entire pre-settlement period. *See* RP § 14-117(b)(2)(iii) ("If the violation is discovered

---

*Id.* § 14-117(b)(2)(ii) (emphasis added). Because an individual does not incur the obligation to pay the deferred charges until settlement, one naturally will not have "actually paid" any of the deferred charges until settlement or sometime thereafter.

[8] Ms. Sullivan argues that Caruso's interpretation of the Disclosure Act is "fundamentally flawed because it incorrectly assumes that all three remedies available under (b)(2) are governed by CJ[P] § 5-101[.]" According to Ms. Sullivan, RP § 14-117(b)(2)(iii)—the recission provision—is not subject to CJP § 5-101's three-year statute of limitations for two reasons. First, CJP § 5-101 applies only to civil actions at law and subsection (b)(2)(iii) provides for an equitable remedy that is assertable as a defense (and is not its own cause of action). Second, subsection (b)(2)(iii) specifies a time at which the aggrieved party may act (before settlement), invoking CJP § 5-101's "unless another provision of the Code provides a different period of time" clause. Ms. Sullivan again conflates remedies and causes of action. "A statute of limitations is a procedural device that operates as a defense to limit the *remedy* available from an existing cause of action." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 636 n.1 (2018) (emphasis added) (quoting *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989)); *see also Waddell v. Kirkpatrick*, 331 Md. 52, 59 (1993) ("[A] statute of limitations affects only the remedy, not the cause of action . . . ."). The General Assembly has specified that CJP § 5-101 applies to "civil actions at law[,]" thereby limiting the available *remedies*—without regard to whether the *remedy* is legal or equitable—for civil actions at law. Under Ms. Sullivan's view, a cause of action for a breach of contract would be governed by CJP § 5-101 depending on the remedy sought. For example, even though a breach of contract is a civil action at law, a plaintiff who seeks monetary damages would be subject to CJP § 5-101 but not if that very same plaintiff seeks specific performance. Similarly, a statutory cause of action for violating the Disclosure Act, for which the primary remedies are statutorily defined monetary awards, is a civil action at law subject to CJP § 5-101.

18

*before settlement*, [the purchaser may] rescind the real estate contract without penalty." (emphasis added)). Thus, even if subsection (b)(2)(i) is available *only* post-settlement, it does not otherwise negate that Ms. Sullivan could have rescinded the contract under RP § 14-117(b)(2)(iii). For the purposes of accrual and the statute of limitations, it matters only whether a purchaser could have obtained a successful result against a seller, not the purchaser's preferred result.

RP § 14-117(a)(3)(i) and (b)(2) establish the disclosure obligation and a cause of action for a violation of that obligation. Subsections (b)(2)(i)–(iii) then prescribe three separate remedies. Subsection (b)(2) states that a "*[v]iolation* of subsection (a)(3) of this section entitles the purchaser to[]" select one of the three enumerated remedies. RP § 14-117(b)(2) (emphasis added). Thus, the violation of subsection (a)(3)(i) is a condition precedent to subsection (b)(2)'s applicability. In other words, nothing in subsection (b)(2) can exist without a violation of (a)(3)(i) having preceded it. And that corresponds with how we understand and describe the relationship between a cause of action and remedies, with the former always preceding and giving rise to the latter.

We also are mindful of the General Assembly's purpose in enacting certain provisions of RP § 14-117, which unequivocally rebuts Ms. Sullivan's argument that she incurs no damage until she is obligated to pay the deferred water and sewer charges. We previously have interpreted RP § 14-117(a)(2), the subsection imposing an obligation on sellers to disclose deferred water and sewer charges for real property outside of Prince George's County, to serve a remedial purpose. *See Harrison v. John F. Pilli & Sons, Inc.*, 321 Md. 336, 341 (1990) ("[W]e note that the statute is clearly remedial, and that . . .

19

remedial statutes are liberally construed to suppress the evil and advance the remedy.").[9] The Disclosure Act is no less remedial, *see Sullivan I*, 251 Md. App. at 332 (noting that the General Assembly sought to eliminate the lack of "transparency [regarding] how private developers charge[d] and disclose[d] deferred water and sewer charges" (internal quotation marks omitted)), and, in fact, *requires more* than its general counterpart in RP § 14-117(a)(2), *compare* RP § 14-117(a)(2) (requiring that a contract for the initial sale of improved residential real property disclose the "estimated cost . . . of any deferred water and sewer charges for which the purchaser may become liable[]"), *with id.* § 14-117(a)(3)(i) (requiring that the same type of contract in Prince George's County disclose eight specified pieces of information). Because the General Assembly wanted to eliminate certain practices by developers when they passed along deferred water and sewer charges associated with real property in Prince George's County, the Disclosure Act is, thus, aimed at combatting an *informational harm*, as well as curtailing those undesirable business practices. *See Sullivan I*, 251 Md. App. at 332 ("[T]he General Assembly passed House Bill 1043 to provide purchasers with detailed information about water and sewer fees at the time of the initial sale and to provide a remedy when developers violate the disclosure requirements."). Thus, the General Assembly's primary goal was not to compensate purchasers but rather to mandate certain disclosures to ensure that purchasers were well informed prior to entering into these contracts.

---

[9] At the time of this Court's opinion in *Harrison*, the Disclosure Act was codified at RP § 14-118.

20

The nature of the remedies available in RP § 14-117(b)(2)(i)–(iii) further confirms this. The Disclosure Act, the violation of which gives rise to a statutory cause of action, does not incorporate a purchaser's actual damages, if any, as a required element to maintain that cause of action. Instead, the remedies provided in RP § 14-117(b)(2) are untethered to any sort of measurable damage to the purchaser, treating the remedies more as "penalties . . . for violating subsection (a)(3)."[10] *Sullivan I*, 251 Md. App. at 332.

A violation of the Disclosure Act, therefore, gives rise to the cause of action, and there is just one element that a purchaser must establish to be entitled to a remedy: that the seller failed to provide a compliant disclosure at the time of contracting.[11] The resulting harm is an uninformed purchaser and a seller engaging in what legislatively has been

---

[10] We recognize that RP § 14-117(b)(2)(ii) permits a purchaser to recover what they have "actually paid[.]" But again, that is not a required element under the cause of action for a violation of RP § 14-117(a)(3)(i); rather subsection (b)(2)(ii) is one *remedy* that an aggrieved purchaser *may* pursue, which simply requires the seller to indemnify the purchaser for any payments actually made.

[11] At oral argument, Ms. Sullivan's counsel, in furtherance of the argument that RP § 14-117(b)(2)(i)–(iii) are separate causes of action (and not individual remedies), referenced RP § 14-117.1. That section imposes requirements on the person or entity that "imposes a deferred water and sewer charge[,]" and, like the Disclosure Act, requires the disclosure of eight pieces of information. RP § 14-117.1(b). Section 14-117.1 is unlike the Disclosure Act, however, in that there are no legislatively supplied remedies for an entity's violation of RP §14-117.1(b). Counsel posits that this is another reason why we should not hold that a violation of the Disclosure Act is the cause of action with RP § 14-117(b)(2) supplying the remedies: because then RP § 14-117.1(b) is a cause of action without a remedy, and surely, counsel argues, the General Assembly would not have intended such a result. Counsel fails to appreciate, however, that the General Assembly can indeed create legal obligations without creating a cause of action and a corresponding remedy to aid in enforcing that obligation. Thus, we are not persuaded that Ms. Sullivan's interpretation of RP § 14-117.1—if correct—is reason to disregard the Disclosure Act's plain and unambiguous text.

21

deemed improper business practices. There is no need for an aggrieved purchaser to establish any other type of damage. Determining when that cause of action accrues is a function of two more pieces of information.

*First*, when did the aggrieved purchaser know or should have known that the seller violated the Disclosure Act? In other words, when did the aggrieved purchaser know or should have known that the disclosure was noncompliant? *See Cain*, 475 Md. at 35. *Second*, when could the aggrieved purchaser have maintained a successful suit against the seller? *See Dhanda*, 426 Md. at 195; *Weisheit*, 279 Md. at 44. That date, for both requirements, will be—at the earliest—the date the parties enter into the contract[12] because that is when disclosure is required by law and, at that moment, at least one statutory remedy will be immediately available to the aggrieved purchaser.[13] That means that CJP § 5-101's

---

[12] While the *earliest date* that an aggrieved purchaser's cause of action for a seller's violation of the Disclosure Act can accrue is the date of contract, this is not a bright-line rule applicable to every case. Because Maryland utilizes the discovery rule, the date of contract will not be *every* aggrieved purchaser's accrual date. If an aggrieved purchaser can prove that he or she did not know and could not have known that, at the time of contract, a seller's disclosure was noncompliant, then the cause of action could accrue at a later date.

[13] Ms. Sullivan's counsel also seeks support from the fact that the remedies outlined in subsection (b)(2) apply to violations of both subsection (a)(3)(i), as well as (a)(3)(ii), the provision that prevents amortizing the deferred water and sewer assessments beyond 20 years. *See* RP § 14-117(b)(2) ("A violation of subsection (a)(3) of this section entitles the purchaser to . . . ."); *see also Elsberry*, 482 Md. at 189–90 (holding that subsection (a)(3)(ii) applies only to real property located in Prince George's County). We agree that subsection (b)(2) applies to all of subsection (a)(3), but that does not aid Ms. Sullivan's argument. Because subsection (a)(3)(i) requires a seller to disclose, among other things, the "approximate number of payments remaining on the assessment[,]" it will be immediately apparent whether a disclosure also has violated subsection (a)(3)(ii).

three-year statute of limitations ordinarily will commence on the date of contract. *See Dhanda*, 426 Md. at 195; *Weisheit*, 279 Md. at 44.

Ms. Sullivan's interpretation of the Disclosure Act, although it would help her claims here, would in other cases defeat the Disclosure Act's remedial purpose by precluding a purchaser from bringing suit until settlement.[14] Furthermore, Ms. Sullivan's approach focuses on when a purchaser becomes liable for the deferred water and sewer assessments, which, in her eyes, establishes an economic harm. But that approach ignores the General Assembly's intent of eliminating certain business practices and ensuring that purchasers have up front all the pertinent information they need before purchasing a home.

For all the reasons discussed, we reject Ms. Sullivan's interpretation of the Disclosure Act. It is the violation of the Disclosure Act—RP § 14-117(a)(3)(i)—that gives rise to the cause of action because the aggrieved purchaser suffers an informational harm, and RP § 14-117(b)(2) then lists an aggrieved purchaser's potential remedies.

---

[14] At oral argument, counsel for Ms. Sullivan posited that interpreting RP § 14-117(b)(2)(i) to permit a cause of action immediately after a seller violates the Disclosure Act is bad public policy because it would discourage compliance with that subsection by stripping away a noncompliant seller's ability to cure the deficient disclosure before settlement. But even counsel agreed that nothing in the statutory text gives a seller the opportunity to cure a deficient notice provided at the time of contract. Furthermore, this argument misconstrues the statutory scheme. The Disclosure Act imposes upon sellers a strict obligation at the time of contract, and sellers are on notice via the remedies in subsection (b)(2) that noncompliance comes with a price. Thus, RP § 14-117(b)(2)'s penalty-like remedies are themselves the incentive for sellers to comply with the Disclosure Act at the time of contract. Reading in a statutory ability for a noncompliant seller to cure their noncompliance before the time of settlement would, therefore, help sellers escape these penalties and incentivize them *not to comply* with the Disclosure Act. That would be an untenable result and one that the General Assembly surely did not intend.

***C.***      ***Ms. Sullivan's Cause of Action for a Violation of the Disclosure Act Was Untimely***

Under the facts of this case, Ms. Sullivan had sufficient information on the date of contract—July 17, 2015—to know that Caruso violated the Disclosure Act.

Ms. Sullivan does not dispute that she received the Statutory Disclosure or Addendum 11 when she signed the contract; she alleges only that the Statutory Disclosure was deficient. Regardless of whether she is correct about that point, the Statutory Disclosure notified Ms. Sullivan that Caruso was providing this information to her as required by RP § 14-117. Ms. Sullivan, therefore, was on notice that Caruso had a legal obligation to disclose to her certain information under a specific statute. Here, the disclosure identified that the amount of the assessment remaining to be paid off, over the course of 23 years with an interest rate of 8 percent, was $20,700. It also identified the amount required for immediate payoff, with no prepayment penalty, was also $20,700. Those statements could not possibly both be true, providing Ms. Sullivan at least inquiry notice of the alleged violation.

Because Ms. Sullivan was on inquiry notice, i.e., she was charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation, as of July 17, 2015, that Caruso violated its statutory obligation under the Disclosure Act, and because she had at least one viable statutory remedy available as of that date to successfully pursue her cause of action, she was required to file her claim on or before July 17, 2018. Because she filed the underlying claim after July 17, 2018, her claim is barred by the statute

of limitations, and the circuit court was correct to dismiss her Second Amended Class Action Complaint.  *See* CJP § 5-101.

## V
## CONCLUSION

We hold that when a seller violates the Disclosure Act (RP § 14-117(a)(3)(i)) by failing to provide a compliant notice at the time of contract, an aggrieved purchaser suffers an immediate informational harm, and the corresponding cause of action is for the seller's violation of the Disclosure Act.  An aggrieved purchaser's corresponding remedies are laid out in RP § 14-117(b)(2)(i)–(iii).  Because the General Assembly has provided for statutory remedies, some of which will always be available to a purchaser regardless of when the purchaser discovers the violation, an aggrieved purchaser's cause of action accrues— ordinarily and at the earliest—on the date of contract.

The parties entered into the Contract on July 17, 2015, and Caruso allegedly violated its obligation under the Disclosure Act to provide a compliant notice on that date.  Ms. Sullivan had sufficient information on the date of contract to maintain a successful cause of action against Caruso.  Thus, that is when CJP § 5-101's three-year statute of limitations commenced.  Because Ms. Sullivan filed her suit in February 2019, she was beyond the three-year statute of limitations, and the circuit court was correct to dismiss her Second Amended Class Action Complaint.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED AND REMANDED WITH INSTRUCTIONS TO THAT COURT TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. RESPONDENT TO PAY COSTS IN THE APPELLATE COURT OF MARYLAND AND THIS COURT.**